UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY BROWN,

        Petitioner,        Case No. 1:17-cv-571

v.        Honorable Paul L. Maloney

SHANE JACKSON,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Anthony Brown presently is incarcerated at the Carson City Correctional Facility. Petitioner pleaded guilty in the Chippewa County Circuit Court to assault with intent to commit great bodily harm less than murder, MICH. COMP. LAWS § 750.84. On July 21, 2009, the court sentenced him to a prison term of three years and seven months to ten years.

Petitioner was released on parole in early 2016. On June 29, 2016, Petitioner was charged with three parole violations:

> **Count 1, violation of condition 04**: On or about June 20, 2016 you engaged in behaviour that was assaultive, abusive, threatening and/or intimidating by harassing/threatening Monika Rejman using a telecommunications device
>
> **Count 2, violation of condition 04**: On or about June 28, 2016 you engaged in behavior that was assaultive, abusive, threatening and/or intimidating by using verbally abusive language towards Pontiac Parole Officer Milam J. Brooks.
>
> **Count 3, violation of condition 04**, On or about June 28, 2016 you engaged in behavior that was assaultive, abusive, threatening and/or intimidating by using verbally abusive language towards Pontiac Parole Officer Daniel Nash.

(Prelim. Parole Violation Hr'g Report, ECF No. 1-1, PageID.22.) A preliminary parole violation hearing was held on July 5, 2016, at which Petitioner and his parole agent, Milam Brooks, were present. Agent Brooks testified at the hearing, and the examiner played recordings of telephone messages left for the victim, Monika Rejman, by Petitioner. At the end of the hearing, the hearing officer found probable cause to believe that Petitioner had committed the violations. (*Id.*, PageID.22-23.)

The parole board subsequently conducted the formal parole hearing. Before the hearing, Petitioner agreed to plead guilty to Count 2, and Parole Specialist Michelle Risley moved to dismiss Count 3 for cause. At the hearing on Count 1, both Rejman and Petitioner testified, as

did Oakland County Detective James Zoedak. In addition, Petitioner's voice mails, texts, and facebook posts were admitted into evidence. Petitioner defended himself on the ground the Rejman caused Petitioner to be discharged from his job, because Petitioner had refused Rejman's request for oral sex. The hearing officer found Petitioner guilty of the first count, making the following findings:

> To prove count 1, the State must show that the parolee engaged in assaultive, abusive, threatening, or intimidating behavior. It is undisputed that the parolee left both voicemail messages for Monika after he was terminated from his employment. His tone during the calls is extremely aggressive. He calls Monika a "stinky slut, ugly ass, crater face bitch, bumpy face, foreign ass ugly fucking bed bu[g] bringing into this country foreign ass bitch." During the second call, he tells her he is going to "fuck up your family just like you fucked up mine." The only reasonable conclusion to draw from the parolee's vulgar, indecent, and offensive word choice is that he intended to frighten, intimidate, and harass Monika.
>
> I considered the parolee's defense and attributed it no weight. His main claim - that Monika had him fired from his job to get back at him because he declined her offer to perform oral sex on him - lacks any record support. After listening to the testimony and observing the demeanor of all parties, the examiner only concludes that Monika has absolutely zero sexual interest in the parolee. She would not have offered to perform oral sex on him, and if she had, the parolee would have hastily accepted. While his account provides loads of comic relief, it fails for plausibility.
>
> It should also be noted that even assuming the parolee was being truthful, a stretch that almost hinges on absurdity, he does not establish any justification for the harassing, threatening, and intimidating voicemails that he left on Monika's phone. Retribution for losing his employment is not a defense.
>
> I find that the parolee left both voicemails on Monika's phone. He lodged many offensive remarks toward her and threatened to fuck up her family. His tone and word choice comfortably fits beneath the umbrella of threatening or intimidating behavior. He is GUILTY of count 1.

(Formal Parole Violation Hr'g Report, ECF No. 1-1, PageID.27.) Because of the disturbing nature of Petitioner's messages and Petitioner's lack of remorse, and noting that Petitioner was in custody on the underlying assault charge, the hearing officer recommended a continuance before the next

parole hearing. (*Id.*) On August 2, 2016, the Parole Board found him guilty of Counts 1 and 2 and continued consideration of his parole for twelve months.

Petitioner delayed filing a claim of appeal until May 5, 2017. (Claim of Appeal, ECF No. 1-1, PageID.18.) The Ingham County Circuit Court dismissed the appeal as untimely on June 13, 2017. (Order of Dismissal, ECF No. 1-1, PageID.19.)

In his habeas application, Petitioner raises the following issue:

I.   The Complaining Witness was not present at the Preliminary Revocation Hearing.

(Pet., ECF No. 1, PageID.6.)

## **Discussion**

I.   Exhaustion

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971), *cited in Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

process." *O'Sullivan*, 526 U.S. at 845.  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

The exhaustion requirement applies to claims challenging the revocation of parole. *See Sneed v. Donahue*, 993 F.2d 1239, 1241 (6th Cir. 1993) (noting that petitioner had exhausted all state remedies before bringing habeas action challenging the revocation of his parole); *Brewer v. Dahlberg*, 942 F.2d 328, 337 (6th Cir. 1991) (dismissing challenge to state parole revocation because state remedies were arguably available).  Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The state courts should have a full and fair opportunity to cure any constitutional infirmities in petitioner's conviction.  *See Brewer*, 942 F.2d at 340.  "[A] state may not be considered to have waived the defense of nonexhaustion unless it does so expressly and through counsel." *Rockwell v. Yukins*, 217 F.3d 421, 423-24 (6th Cir. 2000).

Parole revocations are subject to direct review under Michigan's Administrative Procedures Act, Mich. Comp. Laws § 24.304(1). *See Penn v. Dep't of Corr.*, 298 N.W.2d 756, 757-58 (Mich. Ct. App. 1980) (noting that the MDOC is an agency for purposes of the Administrative Procedures Act and that a parole revocation proceeding is a contested case that triggers application of the Administrative Procedures Act); *Witzke v. Withrow*, 702 F. Supp. 1338, 1348-49 (W.D. Mich. 1988).  Under the Administrative Procedures Act, a prisoner may file a petition in circuit court to appeal a final decision of the parole board within sixty days after the date of mailing notice of the agency's final decision. *See* MICH. COMP. LAWS § 24.304(1).  Petitioner did not seek review under the APA within sixty days of the parole board's decision.  As a result, the circuit court denied the appeal as untimely.

A prisoner also may attack the decision to revoke his parole by filing a state petition for habeas corpus relief.  *See Morales v. Mich. Parole Bd.*, 676 N.W.2d 221, 230 (Mich. Ct. App. 2003); *Hinton v. Mich. Parole Bd.*, 383 N.W.2d 626, 629–30 (Mich. Ct. App. 1986); *Triplett v. Deputy Warden*, 371 N.W.2d 862, 865 (Mich. Ct. App. 1985); *see also Caley v. Hudson*, 759 F. Supp. 378, 381 (E.D. Mich. 1991) (dismissing federal habeas corpus petition by a state prisoner for lack of exhaustion of his available state habeas corpus remedy to challenge the revocation of his parole).  A prisoner may, at any time, file a state writ of habeas corpus to challenge the revocation of his parole as long as the prisoner will be in custody at the time the judgment becomes effective.  *See Triplett*, 371 N.W.2d at 865.

Petitioner does not allege that he has filed a state complaint for habeas corpus.  He therefore has at least one available state remedy.  Nevertheless, this Court may deny a petition for habeas relief without requiring exhaustion.  *See* 28 U.S.C. § 1954(b)(2).  Because Petitioner's claim is patently frivolous, the Court will address the issue on the merits, notwithstanding Petitioner's failure to exhaust.

II.    Missing Complainant

Petitioner claims that his due process and state statutory rights, *see* MICH. COMP. LAWS § 791.239a, were violated when the victim, Monika Rejman, failed to appear at the preliminary hearing on his parole revocation hearing.  He acknowledges that she did appear and testify at the formal parole revocation hearing.

To the extent that Petitioner argues that he was deprived of his rights under state law, he fails to state a claim.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson*

*v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

To the extent that Petitioner raises a due process claim, his claim lacks merit.  In *Morrissey v. Brewer*, 408 U.S. 471, 481-84 (1972), the Supreme Court held that individuals threatened with the revocation of their parole possess a liberty interest that entitles them to minimal due process protections.  In defining those minimal due process protections, the Supreme Court recognized two important stages in the parole revocation process – the preliminary hearing and the revocation hearing. *Id.* at 485.  The Court stated that a preliminary hearing should be held promptly after the alleged parole violation or arrest to determine whether probable cause exists to hold the parolee for a revocation hearing.  *Id.* at 485-87.  If probable cause is found to exist, the parolee has a right to a hearing prior to a final decision on revocation by the state parole authority.  *Id.* at 487-88.  The Court described the minimal due process requirements at the preliminary hearing stage as follows:

> [T]he parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation.  The notice should state what parole violations have been alleged.  At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer.  *On request of the parolee, person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence.*  However, if the hearing officer determines that an informant would be

> subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.
>
> The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position. Based on the information before him, the officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation. Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision. As in *Goldberg*, 'the decision maker should state the reasons for his determination and indicate the evidence he relied on . . .' but it should be remembered that this is not a final determination calling for 'formal findings of fact and conclusions of law.' 397 U.S., at 271. No interest would be served by formalism in this process; informality will not lessen the utility of this inquiry in reducing the risk of error.

*Id.* at 487-88 (emphasis added) (quoting *Goldberg v. Kelly*, 397 U.S. 267, 271 (1970)). In addition, the Court recognized that, because the revocation of parole is not part of a criminal prosecution, parolees are not entitled to the full panoply of rights given to defendants in criminal proceedings. *Id.*, 408 U.S. at 480. During parole revocation proceedings, the reviewer may consider evidence that would not necessarily be admissible in adversary criminal proceeding such as letters, affidavits, and hearsay testimony. *Id.* at 489; *see also United States v. Froman*, No. 86-5540, 1987 WL 36965, *2-3 (6th Cir. April 6, 1987).

Petitioner maintains that he was denied a fair preliminary hearing because Monika Rejman did not appear at the preliminary hearing. Instead, the parole officer was the only witness. In addition, the messages left by Petitioner on Rejman's phone were admitted.

Petitioner cannot demonstrate error, however, because he utterly fails to allege that he requested that Rejman appear, as required by *Morrisey*, 408 U.S. at 487. Moreover, even had Rejman been called and had Petitioner been allowed to cross-examine her, Petitioner's undisputed

voicemail messages themselves were ample to support a finding of probable cause on Count 1. Further, Rejman's absence at the preliminary hearing was cured by her presence at the formal revocation hearing. *See Edwards v. Edwards*, No. 86-1687, 1987 WL 37289, at *1 (6th Cir. May 7, 1987) (holding that error regarding the preliminary examination is rendered harmless by a properly conducted revocation proceeding) (citing *Lambert v. Warden, U.S. Penitentiary*, 591 F.2d 4, 8 (5th Cir. 1979); *Lewis v. U.S. Parole Comm'n*, 448 F. Supp. 1327, 1330 (E.D. Michigan 1978)); *Maule v. Crawford et al.*, No. 1:06-cv-236, 2009 WL 559876, at *10 (W.D. Mich. Mar. 4, 2009) (holding that, because the preliminary hearing and parole revocation proceedings were steps in the same process, the failure to produce a witness at the preliminary hearing does not violate due process if the witness was present at the parole revocation proceeding); *Merlino v. Mich. Dep't of Corr.*, No. 05-73608, 2005 WL 3107740, at *3 (E.D. Mich. Nov. 18, 2005) (holding any error in failing to call a witness at a preliminary examination is cured if the witness testifies at the formal parole revocation hearing); *cf Pierson v. Palmer*, No. Civ. A 01-CV-71851-DT, 2002 WL 31236195, at *4 (E.D. Mich. Sept. 4, 2002) (holding that "[a]ny error at the preliminary hearing has been rendered moot by the formal revocation hearing") (citing, *inter alia*, *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (reiterating the "established rule that illegal arrest or detention does not void a subsequent conviction).

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   July 25, 2017                         /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge